UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL WAYNE SHELLITO,

                    Petitioner,

vs.                                    Case No. 3:18-cv-868-J-39JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.

_____

**ORDER**

**I.   INTRODUCTION**

Petitioner Michael Wayne Shellito is serving a term of life in prison without the possibility of parole for the offense of first degree murder.[1]  Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Petition) (Doc. 1).   Through counsel, he is challenging his state court (Duval County) conviction for murder. Respondents filed State's Answer in Response to Order to Show Cause (Response) (Doc. 13).[2]  Petitioner countered with his Reply to Response to Petition for Writ of Habeas Corpus (Reply) (Doc. 16).

_____

[1] The Florida Supreme Court vacated Petitioner's sentence of death and remanded for a new penalty phase proceeding.  (Doc. 13-15 at 31-32).  Petitioner is now serving a sentence of life without the possibility of parole.  Petition at 2.

[2] Respondents provided an Index to Exhibits (Doc. 13 at 66-67) with exhibits.  In this opinion, the Court references the page numbers

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).  A petitioner must make a specific factual proffer or proffer evidence that, if true, would provide entitlement to relief.  Jones, 834 F.3d at 1319 (citations omitted).  Conclusory allegations will not suffice.  Id.

In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief;[3] therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

_____

assigned by the electronic filing system.

[3] The Court notes Petitioner received a postconviction evidentiary hearing in state court and was represented by counsel in that proceeding.

Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Thus, the Court finds Petitioner is not entitled to an evidentiary hearing.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### III.  PETITION

Petitioner lists three grounds for habeas relief:

> GROUND ONE:  The State withheld evidence which was material and exculpatory in nature and/or presented false evidence in violation of Mr. Shellito's Constitutional rights.

> GROUND TWO:  Mr. Shellito was denied the effective assistance of counsel at the guilt phase of the capital proceedings, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.[4]

> GROUND THREE:  Mr. Shellito was absent from critical stages of the trial in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Appellate Counsel's failure to raise this claim was deficient performance which denied Mr. Shellito effective assistance of counsel on direct appeal.

Petition at 16, 22, 33.

---

[4] In ground two, Petitioner points to alleged deficiencies in counsel's performance:  (1) failure to conduct an adequate voir dire/jury selection; (2) failure to present testimony from the defense investigator and additional testimony from Detective Hinson implicating Stephen Gill; (3) failure to present a voluntary intoxication defense; and (4) opening the door to Ms. Teresa Ritzer's highly prejudicial testimony.  Petition at 22-32.

3

Petitioner asks that his judgment and sentence be reversed. Id. at 37.  He contends habeas relief is warranted based on his expressed grounds for relief.  Reply at 14.

### IV.  HABEAS REVIEW

In this case, Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Court recognizes its authority to award habeas corpus relief to state prisoners "is limited-by both statute and Supreme Court precedent."  Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1330 (11th Cir. 2019), petition for cert. filed, (U.S. Apr. 20, 2019) (No. 19-8341).  The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court[,]" Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted), limiting a federal court's authority to award habeas relief.  See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").  As such, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

4

the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019), cert. denied, 140 S. Ct. 2520 (2020).

In Knight, the Eleventh Circuit explained:

> A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams [v. Taylor, 529 U.S. 362 (2000)] at 413, 120 S. Ct. 1495. A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" Virginia v. LeBlanc, --- U.S. ----, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017)(quoting Woods v. Donald, --- U.S. ---, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015)); see also Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (explaining that "an unreasonable application is different from an incorrect one.").

Knight, 936 F.3d at 1330-31.

To obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir.), cert. denied, 140 S. Ct. 394 (2019). Therefore, unless the petitioner shows the state-court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

This Court must accept that a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

The reviewing federal court's habeas corpus consideration of a petition under AEDPA is a guard against extreme malfunctions in the state criminal justice systems, not a mechanism for ordinary error correction. Richter, 562 U.S. at 102-103 (citation and quotation marks omitted). As noted in Sealey, 954 F.3d at 1354 (citations omitted), when reviewing whether there has been an unreasonable application of federal law, "[t]he key word is 'unreasonable,' which is more than simply incorrect." Consequently, state-court judgments will not easily be set aside due to the applicability of the highly deferential AEDPA standard that is intentionally difficult to meet. See Richter, 562 U.S. at 102. Although a high hurdle, this high standard does not impose a complete bar to issuing a writ, but it severely limits those occasions to those "where there is no possibility fairminded

jurists could disagree that the state court's decision conflicts" with Supreme Court precedent.  Id.

### V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises claims of both ineffective assistance of trial counsel and ineffective assistance of appellate counsel.  To prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

The two-part Strickland standard applies to Petitioner's claim of ineffective assistance of appellate counsel as well:

> An ineffective assistance of appellate counsel claim is "governed by the same standards applied to trial counsel under Strickland." Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) (internal quotation marks omitted). To show a meritorious Sixth Amendment claim of ineffective assistance of appellate counsel, a petitioner must demonstrate (1) deficient performance, indicating that the attorney failed to function as required by the Sixth Amendment; and (2) that counsel's deficient

performance prejudiced the petitioner. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. 2052.

"Under the first prong, [the petitioner] must show that his direct appellate counsel's performance 'fell below an objective standard of reasonableness.'" <u>Brooks</u>, 719 F.3d at 1300 (quoting <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. 2052). There exists "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. 2052. Further, "[a]ppellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments." <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). "Under <u>Strickland</u>'s second prong, [the petitioner] must show that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Brooks</u>, 719 F.3d at 1300 (quoting <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. (internal quotation marks omitted). "'The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.'" <u>Overstreet</u>, 811 F.3d at 1287 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011)). Under this "double deference," then, "the question becomes whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." <u>Evans v. Sec'y, Fla. Dep't of Corr.</u>, 699 F.3d 1249, 1268 (11th Cir. 2012) (internal quotation marks omitted).

Corales-Carranza v. Sec'y, Fla. Dep't of Corr., 768 F. App'x 953, 957 (11th Cir. 2019) (per curiam).  See Garcia v. Sec'y, Dep't of Corr., No. 5:17-CV-121-OC-39PRL, 2020 WL 708139, at *11 (M.D. Fla. Feb. 12, 2020) (recognizing the applicability of the two-part Strickland standard to a claim of ineffective assistance of appellate counsel).

## VI.   GROUND ONE

> GROUND ONE:  The State withheld evidence which was material and exculpatory in nature and/or presented false evidence in violation of Mr. Shellito's Constitutional rights.

In support of ground one, Petitioner asserts the prosecutor at the state evidentiary hearing conceded that the state's witness, Richard Bays, testified falsely.  Petition at 16.  Petitioner submits that Bays' testimony was false in two respects: (1) that he was facing life in prison due to his status as a habitual offender, and (2) he was not receiving any benefit for his testimony.  Id.  Petitioner argues Bays received a benefit for his testimony because the day before Bays testified, the day of jury selection, the prosecutor withdrew the notice to prosecute Bays as a career criminal.  Id. at 16-17.  Petitioner's trial counsel was unaware that the notice had been withdrawn.  Id. at 17.

Petitioner claims:  "[a]t Mr. Shellito's capital trial Bays testified that he was facing a life sentence on his pending charges

10

(T. 434).  He was not.  Prosecutor Plotkin who knew that Bays was testifying falsely sat mute." Petition at 19.  Petitioner also claims Bays knew he would receive a benefit because he knew that if he testified truthfully his testimony would be taken into consideration.  Id.  Indeed, a week after Petitioner's sentencing, Bays entered a plea to accessory after the fact and received a sentence of thirteen months in jail, which meant he was released upon his plea.  Id.  Petitioner argues Bays offered critical testimony because he was the only witness who placed the murder weapon in Petitioner's hands before the murder and Bays testified Petitioner admitted to the crime.  Id. at 20.

Respondents construe Petitioner's claim as a Giglio[5] claim asserting the prosecutor failed to correct false testimony that Bays was facing life and not receiving any benefit for his testimony.  Response at 17.  Respondents concede exhaustion as Petitioner raised this issue in ground four of his postconviction motion and then appealed the denial of the claim.  Id.

It is important to recognize Petitioner's Brady/Giglio claim was vetted at the state evidentiary hearing.[6]  After hearing the

---

[5] Giglio v. United States, 405 U.S. 150 (1972) (to establish a Giglio violation, a defendant must demonstrate the testimony was false, the prosecutor knew the testimony was false, and the statement was material).

[6] Brady v. Maryland, 373 U.S. 83 (1963) (to successfully sustain a

testimony and making credibility determinations, the trial court denied the claim in its Amended Order Denying Defendant's Motions for Post Conviction Relief. (Doc. 13-9). The trial court noted Petitioner alleged the state committed its violation by withholding material and exculpatory evidence, and/or presented misleading evidence, which rendered his counsel's performance ineffective. Id. at 20. The court set forth what must be demonstrated to successfully prevail on a Brady claim. Id. at 21. The court summarized the evidentiary hearing testimony of former Assistant State Attorney Jay Plotkin. Id. Notably, Mr. Plotkin testified he did file the Notice of Withdrawal of Habitual Violent Felony Offender as to Mr. Bays on July 17, 1995, the day Petitioner's trial started. Id. Mr. Plotkin attested he sent the notice to defense counsel and said he withdrew the notice because he did not consider Mr. Bays to be qualified for the habitual offender status and the original notice was filed in error. Id. The trial court also focused on the fact that Mr. Plotkin testified: "no agreements were ever made with Mr. Bays regarding HVFO status and his testimony, and the terms of Mr. Bays' plea

---

Brady claim, a defendant must show favorable evidence – either exculpatory or impeaching, was willfully or inadvertently suppressed by the state, and the evidence was material, resulting in prejudice to defendant).

12

agreement were not worked out until subsequent to the Defendant's case." Id.

Of import, the trial court also opined, even assuming arguendo there had been an agreement between the prosecutor and Mr. Bays concerning an exchange of testimony for not pursuing habitualization, Petitioner failed to establish prejudice because Mr. Bays testimony mirrored others' testimony, as well as other evidence presented at trial. Id. at 21-22. As such, the trial court found Petitioner failed to establish a reasonable probability that the outcome of the trial would have been different had an agreement been made and known, as alleged. Id. at 22.

On appeal of the denial of the postconviction motion, in Argument III of Appellant's Brief, Petitioner raised the following issue:

> The circuit court erred in denying Mr. Shellito's claim that he was deprived of his rights to due process under the Fourteenth Amendment to the United States Constitution as well as his rights under Fifth, Sixth, and Eighth Amendments, because the state withheld evidence which was material and exculpatory in nature and/or presented misleading evidence.

(Doc. 13-10 at 6).

Of import, the brief included citation to Napue v. Illinois, 360 U.S. 264, 265-66, 69-70 (1959) concerning a Brady/Giglio claim asserting failure to reveal a promise for consideration for

13

testimony and an asserted Giglio violation for failure of the state, having knowledge of the promise, to correct a witnesses' false testimony. (Doc. 13-10 at 88 n.48). Also cited as authority is United States v. Bagley, 473 U.S. 667, 683 (1985) (recognizing the possibility of reward strengthens the incentive to testify falsely). Petitioner argued a Giglio violation (false testimony, prosecutor knew it to be false, and the materiality of the testimony). (Doc. 13-10 at 89). Asserting materiality of Bays' testimony, Petitioner said Bays was the only person who placed the gun in Petitioner's hands before the murder, and additionally, Petitioner admitted the shooting to Bays. Id. at 89-90.

In response, the state, in its Answer Brief of Appellee, argued Petitioner failed to allege a Giglio violation below, presenting just a Brady violation. (Doc. 13-11 at 86). Assuming Petitioner presented both Brady and Giglio claims, the state argued the trial court's decision merited affirmance based on record-supported sound reasoning. Alternatively, because the subjective belief of a witness that a prosecutor would help him is insufficient under both Brady and Giglio, the state argued Petitioner also failed to meet his burden to prove the prosecutor offered something to induce Bays' testimony. Id. at 87-89. Furthermore, the state argued the trial court accredited the

14

prosecutor's testimony denying any promises to Bays based on competent, substantial evidence; therefore, there can be no substitution of judgment on the credibility issue and the result remains the same. Id. at 89-90. Finally, the state submitted that even if Bays had been subject to cross-examination on agreement or reduced exposure, the impact would have been negligible because Bays' testimony that he faced a life sentence would have remained unchanged as he was still facing a life sentence although the habitual offender notification had been withdrawn and Bays' testimony proved consistent as Bays cooperated from the beginning. Id. at 90.

In its reasoned decision, the Supreme Court of Florida expressly affirmed the trial court's decision denying relief as to the guilt phase, rejecting both the Brady and Giglio claims. (Doc. 13-15 at 26-28, 31). Acknowledging the claims presented mixed questions of law and fact, the Supreme Court of Florida deferred to the lower court's findings of fact, finding they were supported by competent, substantial evidence. Id. at 26-28. Without the presentation of favorable evidence, the Supreme Court of Florida found a failure to establish a Brady violation ("Contrary to Shellito's assertion, the record reveals that there was no agreement entered into between Ricky Bays and the State whereby Bays' testimony in Shellito's murder trial was agreed to be offered

15

in consideration for the State's disposition of Bays' armed robbery case."). Id. at 27 (footnote omitted).

The Florida Supreme Court, with regard to the Giglio claim, noted that Bays testified he understood he was facing a maximum possible penalty of life imprisonment in his armed robbery case, he was not promised anything for his testimony by the prosecutor or the police, and he understood he could receive a fifteen-year minimum mandatory sentence. Id. at 28. The Florida Supreme Court found there was no falsity in the statement because there was no evidence of an agreement for the withdrawal of the habitual violent felony offender notice, or any other benefit, given in consideration for Bays' testimony. Id. The Supreme Court also took note that Bays never mentioned habitual offender status during his testimony, and his testimony that he was facing life in prison was true even without the habitual offender status as Bays was facing a life sentence for armed robbery (armed robbery is a felony punishable by life). Id. at 29. The court agreed that Bays testified falsely at trial when he said he was facing a fifteen-year mandatory minimum; however, as this statement was not material (there was no reasonable likelihood that this false testimony could have affected the judgment of the jury), the court concluded there was no Giglio violation. (Doc. 13-15 at 29, relying on Guzman v.

16

<u>State</u>, 868 So.2d 498, 506 (Fla. 2003) (per curiam) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976))).

Petitioner has not rebutted with clear and convincing evidence the state court's determination that there was no promise or agreement entered into between Bays and the state whereby Bays' testimony in Petitioner's murder case was agreed to be offered in consideration for the state's disposition in Bays' armed robbery case. Notably, the only agreement occurred after the disposition of Petitioner's case. Thus, there is no favorable evidence of a <u>Brady</u> violation. Moreover, as there was no materially false testimony, there is no <u>Giglio</u> violation. Ultimately, Bays faced life imprisonment whether he was tried as a habitual violent felony offender or just tried for armed robbery. Thus, the material testimony is not considered to be false and no prejudice ensued.

There was competent and substantial evidence to support these state-court determinations. (Doc. 13-8 at 280-362, testimony of Jay Plotkin, prosecutor). Mr. Plotkin testified "[t]here was no understanding in this case specifically as to Mr. Bays' sentence." <u>Id</u>. at 299. Mr. Plotkin noted Mr. Bays "was cooperative from the beginning." <u>Id</u>. at 324. <u>See id</u>. at 356 (record shows Mr. Bays was a cooperating witness long before Mr. Plotkin had any interaction with him). Mr. Plotkin did say, "Petitioner knew that if he testified truthfully that would be taken into

consideration[,]" id. at 324, but Mr. Plotkin insisted there was no deal so Mr. Bays could truthfully answer the question. Id. at 325. Finally, Mr. Plotkin testified the statutory maximum for armed robbery with a firearm is life. Id. at 362.

The record shows Bays testified at trial that upon his arrest, he was taken to the Police Memorial Building and he gave a sworn statement to the police concerning what Petitioner told Bays about the murder. (Doc. 13-2 at 343-44). Mr. Bays said he was not threatened in any way when he gave his statement. Id. at 344. When asked what his understanding of his maximum possible penalty, he responded life, and he had not entered a plea to date. Id. He also said he had not been promised anything for his testimony by the State Attorney's Office or by the police. Id. Mr. Bays stated he had no idea what his sentence would be. Id. at 344-45.

On cross-examination, defense counsel asked: "[n]ow, the maximum sentence, sir, that you're looking at if you're convicted for armed robbery is life, right?" Id. at 363. Mr. Bays responded in the affirmative. Id. Defense counsel asked: "[a]nd as you understand it you could also receive in that a 15 year minimum mandatory sentence, right?" Id. Mr. Bays responded affirmatively. Id. Clearly, no question was raised as to whether Petitioner was facing a habitual felony offender sentence.

Whether or not Mr. Plotkin understood the law when he withdrew the habitual offender notice for Mr. Bays is not of any consequence.  <u>See</u> Response at 25.  The state court credited Mr. Plotkin's testimony that there was no agreement with Mr. Bays prior to his testimony, and the record shows Mr. Bays had been consistently cooperative with the police since his arrest, even before any contact with Mr. Plotkin, thereby exhibiting no evidence of recent fabrication or falsity in Bays' trial testimony based on some sort of hidden agreement or deal with the prosecutor.

Given the testimony of Mr. Plotkin and the other evidence, there was no deal, and the fact that Mr. Bays, upon arrest, was immediately a cooperating witness, Petitioner "has not come close to rebutting by clear and convincing evidence the presumption of correctness that we must accord the state court's findings."  <u>Hill v. Johnson</u>, 210 F.3d 481, 486 (5th Cir. 2000) (concluding there is no Supreme Court decision supporting an assertion that subjective beliefs of witnesses regarding the possibility of future favorable treatment are sufficient to trigger a state's duty to disclose under <u>Brady</u> and <u>Giglio</u> or gives the reviewing court cause to believe the state court's conclusions are the result of an unreasonable application of the facts to the law), <u>cert. denied</u>, 532 U.S. 1039 (2001).  Indeed, a nebulous expectation of help by a witness is simply not enough to support a <u>Brady</u>/<u>Giglio</u> claim.

Here there was no evidence of a side deal regarding the future prosecution of Mr. Bays, nor was there evidence of the prosecutor concealing such a promise from the jury.  See Williams v. Williams, 232 F.Supp.3d 1318, 1324 (S.D. Ga. Feb. 8, 2017) (district court adopting report and recommendation of magistrate judge) (finding a leniency deal with the witness was one of sufficient impact so that failure to disclose was critically important).  Of course, any agreements, understandings, and promises must be disclosed, Haber v. Wainwright, 756 F.2d 1520, 1524 (11th Cir. 1985), and "[e]ven partly formed understandings, agreements, and side-deals" are to be disclosed.  Williams, 232 F.Supp.3d at 1325 (citation omitted).  As such, verbal assurances of non-prosecution, police promises to a prosecution witness that the police would talk to the prosecutor on behalf of the witness, and even a promise to write a letter to the parole board on behalf of a state's witness may constitute just such a side-deal or agreement that must be disclosed.

Apparently, the trial court credited the testimony of Mr. Plotkin that no agreements were made with Mr. Bays regarding his habitual offender status and his testimony (Doc. 13-9 at 21), and there was no evidence of "*quid pro quo*" for Bays' testimony prior to or during the Petitioner's trial.  Rodriguez v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1277, 1307 (11th Cir. 2014), cert. denied,

20

575 U.S. 939 (2015).  Given this Court's deference to the trial court's factual finding that the prosecutor's testimony was not false concerning whether or not the prosecutor and Mr. Bays struck a deal, Petitioner's <u>Brady</u> claim is foreclosed.

Of significance, it was not false testimony that Bays stated he was facing a maximum of life imprisonment for armed robbery. As this was an accurate statement, it could not violate the <u>Giglio</u> rule.[7]  <u>Hammond v. Hall</u>, 586 F.3d 1289, 1306-1307 (11th Cir. 2009) (citation omitted) ("A <u>Giglio</u> claim involves an aggravated type of <u>Brady</u> violation in which the suppression of evidence enabled the prosecutor to put before the jury what he knew was false or misleading testimony[.]"), <u>cert. denied</u>, 562 U.S. 1145 (2011). Although Bays testified falsely he was facing a fifteen-year mandatory minimum, the statement was not material (there was no reasonable likelihood that this false testimony could have affected the judgment of the jury); therefore, there was no <u>Giglio</u> violation.[8]  Even assuming there was a <u>Giglio</u> violation (a more

---

[7] Petitioner claims prosecutor Plotkin knew Bays was testifying falsely and sat mute when Bays said he was facing a life sentence on his pending charges.  Petition at 19.

[8] Apparently, Bays did not know his trial testimony was false concerning his facing a fifteen-year minimum mandatory term as the state's notice of withdrawal of the habitual violent felony offender notice had just been filed by the state and not yet received by the defense.

defense-friendly burden),[9] Petitioner has failed to satisfy the standard set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (internal quotation marks omitted), as Petitioner failed to demonstrate any violation "had substantial and injurious effect or influence in determining the jury's verdict[.]"  Moreover, even assuming Bays had been subjected to cross-examination on agreement or reduced exposure, the impact would have been negligible because Bays' testimony that he faced a life sentence would have remained unchanged and his testimony proved consistent as Bays cooperated from the outset, prior to any discussions with the prosecutor.

This Court presumes the factual determinations of the state court are correct.  Petitioner has failed to rebut the presumption of correctness with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Also, the Court extends deference to the state court's credibility determinations.  After hearing testimony, the trial court made a credibility determination, finding Mr. Plotkin's testimony to be credible.  "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor

---

[9] It is important to recognize that <u>Brady</u> requires a showing the result *would* have been different, whereas <u>Giglio</u> requires a showing the result *could* have been different without the use of perjured testimony.  Petitioner claims prosecutor Plotkin knew Bays was testifying falsely and sat mute when Bays testified there were no promises made by the prosecution in exchange for Bays' testimony and Bays was facing a life sentence on his pending charges. Petition at 19.

has been observed by the state trial court, but not by them.'" Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)), cert. denied, 568 U.S. 849 (2012).

The Court concludes the Florida Supreme Court's decision affirming the trial court's decision on the guilt phase is not contrary to, nor an unreasonable application of controlling United States Supreme Court precedent.  As Petitioner has not demonstrated that the adjudication of the state court was contrary to or an unreasonable application of any clearly established federal law as determined by the United States Supreme Court or an unreasonable determination of the facts, Petitioner is not entitled to habeas relief on this ground.

## VII.  GROUND TWO

> GROUND TWO:  Mr. Shellito was denied the effective assistance of counsel at the guilt phase of the capital proceedings, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Petitioner claims Refik Eler, Petitioner's trial counsel, performed deficiently during voir dire and the guilt stages of the proceedings.  In a streaming fashion, Petitioner presents counsel's alleged deficiencies.  The state has responded to these allegations and broken the response into four distinct categories. For ease of the reader, the Court will do the same:

23

(A) Voir Dire/Jury Selection:

    (1) failure to question the potential jurors with regard to their views on drugs and alcohol abuse as well as mental health;

    (2) failure to attempt to rehabilitate potential jurors concerning views on the death penalty before agreeing to strike the potential jurors for cause;

    (3) failure to use peremptory challenges against potential jurors with connections to law enforcement and/or specialized knowledge of related subjects (fingerprints, lifesaving, firearms);

(B) Guilt Phase – Sufficient Evidence Implicating Gill:

    (1) John Bennett;

    (2) Migdalia Shellito and the defense investigator;

    (3) Detective Hinson;

(C) Guilt Phase – Voluntary Intoxication Defense;

(D) Guilt Phase – "Opening the Door" to Ms. Teresa Ritzer.

Respondents agree that Petitioner exhausted his state court remedies with regard to his claim of ineffective assistance of trial counsel. Response at 29. Notably, the trial court conducted an evidentiary hearing on the postconviction motion. Thus, the claim of ineffective assistance of trial counsel has been well vetted.

Defense counsel, Mr. Eler, testified at the proceeding. The record shows defense counsel was not only experienced, he also had significant experience in death penalty proceedings. (Doc. 13-6

at 12).  Mr. Eler had been an Assistant State Attorney, prosecuting criminal cases from 1986-1989.  <u>Id</u>. at 13.  He went into private practice with Frank Tassone, an experienced criminal defense lawyer, and Mr. Eler engaged in criminal defense work.  <u>Id</u>.  Mr. Eler had 200 jury trials, handled murder cases (some capital cases), including being second chair in death penalty cases, and is an adjunct professor of law teaching trial advocacy.  <u>Id</u>. at 13, 15.  Prior to accepting appointment of Petitioner's case, Mr. Eler had approximately six years of private practice experience. <u>Id</u>. at 14.

**(A) Voir Dire/Jury Selection**

Directing its inquiry to jury selection, postconviction counsel focused on the death penalty qualification that was undertaken and whether it was adequate.  Given that Petitioner is no longer facing the death penalty, many of the complaints about the adequacy of voir dire and jury selection are no longer pertinent to this Court's review (for example, mitigation at the penalty phase).  The trial court addressed the claim of ineffective assistance of trial counsel, denying relief and finding Petitioner's counsel made reasonable tactical decisions or Petitioner's claims were merely speculative.

Generally, Petitioner complains his trial counsel "was completely ineffective in neglecting to remove biased jurors and

25

to attempt rehabilitation of other jurors[.]" Petition at 24. While Petitioner acknowledges Eler's limited time to prepare due to his appointment date, Petitioner states that the hurried nature of trial preparation meant some witnesses were never deposed or spoken to or were deposed shortly before trial, leaving counsel inadequately prepared. Id. The trial court rejected this claim finding it unsupported. (Doc. 13-9 at 8-9) ("The Defendant fails to provide any indication as to the type of information, or any information for that matter, that he alleges trial counsel could have discovered through further deposing of these witnesses that would have in any way been beneficial to his defense and was not already presented at trial."). Ultimately, the court found this claim vague and conclusory, failing to establish deficient performance or prejudice, relying on the Strickland two-pronged standard. Id. at 9.

Concerning the claim that counsel performed inadequately by failing to question potential jurors about their views regarding drugs, alcohol, and mental illness, the trial court rejected the claim finding such failure did not render counsel's performance deficient because Petitioner made no showing that "an unqualified juror with a bias or animus towards the mentally ill or those suffering from drug or alcohol addiction" sat on the jury. Id. The trial court highlighted the fact that Mr. Eler, during the

26

evidentiary hearing on postconviction, testified he considered and rejected using drug or alcohol use as a defense. Id.; (Doc. 13-6 at 131). Consistent with this decision, Mr. Eler testified he did not want to present the blood alcohol toxicology report taken at the time of Petitioner's arrest. (Doc. 13-6 at 137).

At the evidentiary hearing, the focus of the questions concerning mental health were directed to the penalty phase; as Petitioner is no longer serving a sentence of death, these questions and responses are not substantially relevant to this federal proceeding. Id. at 132-36. As such, the Court will direct its focus elsewhere.

On cross-examination at the evidentiary hearing, Mr. Eler responded to questions concerning his reasons for asking the jurors about alcohol and drug use and about any of their training in psychology and psychiatry. Id. at 176-77. When asked whether he would have been more effective asking the jurors more about their views on drugs, alcohol, and mental illness, and whether they were sympathetic to the related ailments and illnesses, Mr. Eler responded, in his experience, the venire in Duval County is "not very sympathetic to that as an excuse and even to an extent mitigation." Id. at 178. He also explained he is careful in his questioning because if a potential juror's response is too

favorable to the defense, the state will strike the potential juror. Id. at 178-79.

Petitioner also raises the matter of counsel's failure to attempt to rehabilitate potential jurors concerning views on the death penalty before agreeing to strike the potential jurors for cause. This claim has limited relevance at this stage as Petitioner is not serving a sentence of death. Nevertheless, it will be considered to the extent it may still be relevant as to the overall question of counsel's performance during voir dire/jury selection.

Petitioner complains counsel's attempts at rehabilitating potential jurors was insufficient. Petition at 23. At the evidentiary hearing, Mr. Eler explained he would have stipulated to a strike for cause if it were a potential juror he did not want, if the juror had work issues and he did not want to upset the juror or cause the juror to punish Petitioner, if counsel read the potential juror's body language and it was not positive for the defense, and for various other reasons. (Doc. 13-6 at 179).

Petitioner also claims counsel's performance was deficient for failure to use peremptory challenges against potential jurors with connections to law enforcement and/or specialized knowledge of related subjects (fingerprints, lifesaving, firearms). Petition at 23. The jurors in question are Ms. Hill (who practiced

as a nurse for five years and took life-saving courses), Mr. Rutledge (a security guard with specialized firearms and ballistics training), and Mr. Wilson (who had fingerprint training, including obtaining latent prints). Id. Petitioner also bases this claim on counsel's failure to determine if these individuals could disregard their specialized training. Id.

In response to a question at the evidentiary hearing, counsel explained it would be to the defense's advantage to have a juror with fingerprint training because that juror may discount the police efforts because the police failed to get fingerprint evidence. (Doc. 13-6 at 180). Mr. Eler said Mr. Rutledge, the security guard, was an attractive juror because he was a young black male, who may identify with Petitioner, a young male, being in a bad spot. Id. Although there was no specific inquiry concerning Ms. Hill, Mr. Eler explained, generally, he likes female jurors because they are more sensitive and open. Id. at 51.

The trial court rejected the contention that trial counsel should have used peremptory challenges to exclude these potential jurors and should have determined if they could disregard their specialized knowledge or training for deliberations. (Doc. 13-9 at 11-12). The court found Petitioner failed to present evidence that his jury was anything but impartial. Id. at 11. The court highlighted Mr. Eler's testimony that he communicated with his

client throughout jury selection, conferred with his client, and Petitioner approved of the jury selection.  Id.  The court found trial counsel's testimony that he conferred with Petitioner more credible  and  more  persuasive  than  Petitioner's  allegations concerning the claim.  Id.

Of  import,  the  court  mentioned  there  was  no  questioning concerning  Ms.  Hill,  but  the  court  found  Petitioner  failed  to present any evidence showing Ms. Hill's prior experience as a nurse in any way affected her ability to render an impartial deliberation and decision in Petitioner's case.  Id. at 12.  Finally, based on all of Mr. Eler's testimony at the evidentiary hearing, the trial court found that counsel made a tactical decision not to challenge "any of these [Mr. Wilson, Ms. Futrell, Mr. Rutledge, and Ms. Hill] potential  jurors."   Id.   As  such,  the  court  found  counsel's performance was not deficient and Petitioner failed to establish error on counsel's part which prejudiced his defense.  Id.

Noting that the trial court found counsel's decisions during voir dire were tactical or strategic,[10] the Florida Supreme Court, in addressing the claim of ineffective assistance of counsel during

---

10 "An  attorney's  actions  are  **sound  trial  strategy,**  and  thus effective,  if  a  reasonable  attorney  could  have  taken  the  same actions."  Harvey v. Warden, Union Correctional Institution, 629 F.3d 1228, 1243 (11th Cir.) (emphasis added), cert. denied, 565 U.S. 1035 (2011).

voir dire, concluded:  "[b]ecause Shellito has failed to prove that Eler was deficient during voir dire, we need not address the prejudice prong."  (Doc. 13-15 at 11).  The Florida Supreme Court found Petitioner's claim that counsel was ineffective for failure to determine if the prospective jurors could disregard their specialized training to be speculative.  Id. at 10.  Finally, the Florida Supreme Court summarily denied Petitioner's "conclusory assertion" that Mr. Eler was deficient when he stipulated to striking for cause certain prospective jurors.  Id. 11 n.4. Affirming the trial court's denial of relief as to the guilt phase, the superior court rejected this ground concerning voir dire/jury selection.

The trial court found defense counsel's testimony more credible and persuasive, and the Florida Supreme Court specifically referenced this finding.  Additionally, for this Court's review of Petitioner's claims of ineffective assistance of counsel, it is significant that Petitioner had the benefit of experienced counsel: "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1364 (11th Cir. 2009) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)), cert. denied, 562 U.S. 872 (2010).  The Court has reviewed the evidentiary

31

hearing, and the record clearly demonstrates Petitioner had the benefit of experienced defense counsel.

In evaluating jury selection claims, a federal court reviews the underlying claim of ineffective assistance of counsel just like any other Strickland claim, employing the strong presumption that trial counsel's performance was constitutionally adequate. Fennell v. Sec'y, Fla. Dep't of Corr., 582 F. App'x 828, 831 (11th Cir. 2014) (per curiam) (citation omitted), cert. denied, 576 U.S. 1039 (2015).   However, a petitioner, in the post-conviction context, has the additional burden of meeting the actual bias requirement that Florida employs.   Id. at 832 (citing Carratelli v. State, 961 So.2d 312, 323 (Fla. 2007)).

Considering this record, including the evidentiary hearing transcript, the Court finds the record supports the state court's findings.   There is no evidence that a biased juror sat on the jury.   Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982) (finding habeas relief is appropriate if a defendant can demonstrate that a juror was biased or incompetent), cert. denied, 459 U.S. 1110 (1983).   Also, considering the record as whole, the determination that trial counsel was not ineffective is not contrary to, or an unreasonable application of Strickland and its progeny as "the bounds of constitutionally effective assistance of counsel are very wide."   Harvey, 629 F.3d at 1243.

As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief.  The Florida Supreme Court affirmed the trial court's decision.  The state court's ruling is entitled to AEDPA deference as its decision is not inconsistent with United States Supreme Court precedent, and the adjudication of this claim is not contrary to or an unreasonable application of United States Supreme Court law or based on an unreasonable determination of the facts.  Petitioner is not entitled to relief on his claim of ineffective assistance of counsel regarding voir dire/jury selection.

**(B) Guilt Phase – Sufficient Evidence Implicating Gill**

    **(1) John Bennett; (2) Migdalia Shellito and the defense investigator; and (3) Detective Hinson.**

Petitioner claims his counsel was ineffective because he failed to "introduce a great deal of evidence that would have placed serious suspicion on Gill and would have supplied reasonable doubt as to Mr. Shellito's involvement in the crime."  Petition at 25.  With regard to John Bennett, Petitioner contends his counsel performed deficiently for failure to bring out the fact that in his deposition, Mr. Bennett said not only did he hear tires squealing, he also heard a shot before he saw a silhouette move

around the truck and enter the driver's side of the truck.  Id. The record shows, at trial, Mr. Bennett did not mention he heard a shot.

Regarding Migdalia Shellito and her testimony that Gill had confessed to her that Gill committed the murder of the victim, Petitioner contends Mr. Eler performed deficiently because he failed to call the defense's investigator to testify that Mrs. Shellito had mentioned Gill's confession to the investigator three months before Petitioner's trial, especially after the state called the court clerk to say that Mrs. Shellito never told the clerk another person confessed to the murder, although Mrs. Shellito said she thought she had told the clerk about Gill's confession.  Id. at 25-26.

Finally, Petitioner argues Mr. Eler performed ineffectively when he did not recall Detective Hinson to testify as to the statements Gill made to him.  Id. at 27.  When Detective Hinson was called as the state's witness, defense counsel tried to examine the detective about the contents of Mr. Gill's statements to him, but these were considered to be hearsay statements.  Id. at 26. Counsel was just able to elicit that Detective Hinson was concerned about Gill's truthfulness.  Id.

After recognizing the Strickland two-pronged standard of review, (Doc. 13-9 at 6), the trial court rejected this claim

34

finding Mr. Bennett was not asked about gunshots and the rest of his testimony was relatively consistent with his deposition testimony. Id. at 16. More importantly, as the court noted, Mr. Eler testified at the evidentiary hearing that he was able to elicit very beneficial testimony from Mr. Bennett at trial. Id. Indeed, upon review of his trial testimony, Mr. Bennett provided very significant testimony for the defense. (Doc. 13-2 at 736-47). He testified that the silhouette he saw appeared to be coming from the driver's side. Id. at 739-40. Even on cross examination by the state, he continued to state that "he would have to be coming from the driver's side." Id. at 745. This testimony bootstrapped the defense as all of the evidence presented at trial supported the conclusion that Mr. Gill had been the driver of the truck and Petitioner had been the passenger in the truck, never the driver. Of note, in his deposition, Mr. Bennett expressed a level of uncertainty as to whether the silhouette came from the driver's side or the passenger's side of the truck. Thus, Bennett's trial testimony was more certain and beneficial to the defense.

The trial court found, "[w]ithout alleging more, the Defendant has failed to provide any showing that he was prejudiced by trial counsel's failure to question Mr. Bennett about hearing gunshots on the night of the incident." (Doc. 13-9 at 16).

Without satisfying the prejudice component, Petitioner cannot prevail on his claim of ineffective assistance of counsel.  See Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1151 (11th Cir. 2017), cert. denied, 138 S. Ct. 2681 (2018).

The trial court, after reviewing Petitioner's assertion that counsel should have called the defense's investigator to testify at trial, concluded counsel's performance was not deficient as the decision of counsel was "tactical in nature."  (Doc. 13-9 at 17). Counsel testified had he listed his investigator as a witness, the investigator would have been subject to deposition and cross-examination by the state, an examination defense counsel would absolutely want to avoid, reasonably fearing dreadful consequences for the defense.  Id.

Finally, regarding the assertion that counsel performed deficiently for failure to re-call Detective Hinson to testify once Stephen Gill pled the Fifth and became unavailable as a witness, the trial court noted that defense counsel testified he was aware there would be the hurdle to overcome of "various hearsay objections[,]" but counsel was able to gain the substance of the needed information through his examination of Detective Hinson on cross-examination, and significantly, counsel was unaware of any confession by Gill to Hinson.  Id. at 17-18.  Finally, and most importantly, "trial counsel was able to get the statement that Mr.

Gill gave to Ms. Shellito admitted at trial." <u>Id</u>. at 18.  In a strikingly positive ruling for the defense, the trial court allowed Mrs. Shellito to take the stand and testify that Gill told her he killed the victim.

Finding neither error and/or prejudice as to trial counsel's failure to call and question Mr. Bennett, the investigator,[11] and Detective Hinson, the trial court denied Petitioner's claim of ineffective assistance of counsel, citing <u>Strickland</u>.  (Doc. 13-9 at 18).  As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief.  The state court's ruling is entitled to AEDPA deference.  The Florida Supreme Court agreed there was no deficiency in this regard, denying the claim of ineffective assistance of counsel at the guilt phase of the trial.  (Doc. 13-15 at 11, 11 n.5, 13 n.8, concerning failure to call the investigator, failure to impeach John Bennett on his prior inconsistent statement that suggested Gill was the shooter, and in failure to recall Detective Hinson).

---

[11] In an apparent scrivener's error, the court referred to counsel's  failure to call and question "Ms. Shellito," when the claim referenced the failure to call the investigator to reveal what Ms. Shellito told the investigator prior to trial.  (Doc. 13-9 at 18).

The state court's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. Thus, AEDPA deference is due, and Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

**(C) Guilt Phase – Voluntary Intoxication Defense**

Petitioner claims his counsel performed deficiently in failing to present a voluntary intoxication defense at trial. Petition at 27-29. Petitioner alleges he was severely addicted to alcohol and marijuana and he had been drinking alcohol and smoking marijuana close in time to the crime. <u>Id</u>. at 27. Petitioner suggests his counsel could have presented this evidence to rebut specific intent and premeditation, to show Petitioner was too intoxicated to drive or shoot the victim, and to explain Petitioner's behavior at the time of his arrest and his lack of control prior to commission of the crime. <u>Id</u>. at 27-28.

At the post-conviction evidentiary hearing, Mr. Eler testified he rejected the notion of presenting drug or alcohol use as a defense, although he was aware that there had been a party or gathering going on before and after the offense, and drugs were being used and alcohol consumed. (Doc. 13-6 at 130-31). Mr. Eler explained the theory of the defense was Mr. Gill committed the

38

murder, not that Petitioner messed up and did not know what was going on. Id. at 132. Mr. Eler did not want to present an inconsistent defense of voluntary intoxication or alter his theory of the defense, causing the jury to question the believability of any of the stated defense. Id.

The trial court concluded counsel's stated tactical decision not to present a defense of voluntary intoxication was adequately explained by defense counsel when he said that defense would run contrary to the defense asserted at trial (innocence) and would have been disingenuous in the eyes of the jury. (Doc. 13-9 at 19). The trial court found the decision not to investigate or pursue the intoxication defense was a tactical decision that did not constitute ineffective assistance of counsel. Id. As such, the court found Petitioner failed to satisfy the performance prong of Strickland. (Doc. 13-9 at 19). Additionally, the trial court found Petitioner failed to establish prejudice, the second prong of Strickland. (Doc. 13-9 at 19). Finding neither deficient performance nor prejudice, the trial court rejected Petitioner's claim. Id.

The trial court applied the Strickland standard in addressing Petitioner's contention that he was deprived of his Sixth Amendment right to reasonable assistance under prevailing professional standards. The court found counsel's performance well within the

broad range of reasonable assistance under prevailing professional norms.  Given that the theory of the defense was innocence, the presentation of a voluntary intoxication defense would have been incompatible with the trial strategy.  Once Petitioner asserted his innocence, an intoxication defense became a complete anathema.  The Florida Supreme Court agreed, finding Mr. Eler "made a reasonable, tactical decision to not pursue a voluntary intoxication defense" as an intoxication defense would have been entirely inconsistent with the theory of the defense that Petitioner did not commit the murder.  (Doc. 13-15 at 12).

The Court is not convinced defense counsel's performance fell below an objective standard of reasonableness.  Indeed, counsel's actions were well within the scope of permissible performance.  The standard is reasonable performance, not perfection.  Brewster, 913 F.3d at 1056 (citation omitted).  In addition, Petitioner has failed to show resulting prejudice, the second prong of the Strickland standard.  There is no reasonable probability that the outcome of the case would have been different if trial counsel had taken the action suggested by Petitioner.

Trial counsel's representation was not so filled with serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment.  The state court's determination is consistent with federal precedent.  The Court

40

concludes AEDPA deference is warranted.  Thus, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.  As such, this claim is due to be denied.

**(D) Guilt Phase – "Opening the "Door" to Ms. Teresa Ritzer**

Petitioner, in this ground, claims his counsel was ineffective in cross-examining Teresa Ritzer, opening the door to highly prejudicial testimony, that is, that Petitioner threatened her life and made admissions to her.  Petitioner at 29-32.  Mr. Eler, at the evidentiary hearing, testified he believed, had he not attempted to impeach Ms. Ritzer by cross-examining her about her previous statement that she never saw or heard anything suspicious and the changes in her story, Petitioner would have had "a probably bigger claim" of ineffective assistance of counsel. (Doc. 13-6 at 184-85).  After hearing counsel's testimony, the trial court found counsel made a tactical decision to cross-examine Ms. Ritzer, weighing the risks entailed with doing so, and this decision did not constitute ineffective assistance as it was not deficient performance.  (Doc. 13-9 at 15).

The Florida Supreme Court rejected the claim of ineffective assistance of counsel, agreeing that defense counsel made a strategic decision to delve into this area, which in hindsight,

opened the door to the admission of unexpected evidence not entirely favorable to the defendant. (Doc. 13-15 at 12). The Florida Supreme Court summarily rejected the contention that trial counsel should have moved for a hearing concerning Ritzer's prior statement. Id. at 13 n.7. Finding counsel failed to prove Mr. Eler was ineffective during the guilt phase, the Florida Supreme Court affirmed the trial court's decision as to the guilt-phase claim. Id. at 31.

The trial court set forth the two-pronged Strickland standard before addressing grounds for relief. The trial court rejected this claim of ineffectiveness after conducting an evidentiary hearing. The court concluded defense counsel's performance was not deficient. The Florida Supreme Court affirmed the trial court's decision denying relief on this ground. Upon review, the state court's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, this claim is due to be denied.

## VIII. GROUND THREE

> GROUND THREE: Mr. Shellito was absent from critical stages of the trial in violation of his Fifth, Sixth, Eighth, and Fourteenth

42

> Amendments to the United States Constitution.
> Appellate Counsel's failure to raise this
> claim was deficient performance which denied
> Mr. Shellito effective assistance of counsel
> on direct appeal.

In his final ground for relief, Petitioner raises a claim of
ineffective assistance of appellate counsel.   He asserts that
appellate counsel's performance was constitutionally deficient
because appellate counsel did not raise the issue that Petitioner
was absent from critical stages of the trial, including conferences
where defense counsel and the prosecutor argued critical issues
before the court, during the review of an alleged witness tampering
incident, and finally, the discussion of a scheduling matter before
the jury.[12]  Petition at 33-34.   This claim is exhausted as it was
presented in Petitioner's state habeas petition as Claim II.
(Doc. 13-13 at 18-20).   The Florida Supreme Court addressed this
claim, noting that a defendant has a constitutional right to be
present at all crucial stages of the trial where absence might
frustrate fairness.   (Doc. 13-15 at 30).   The court opined,
however, that this right does not extend to every conference in
which matters presented in the case are discussed.   Id.   The court
concluded that Petitioner failed to demonstrate he was absent from
critical stages of his trial which might have frustrated the

---

[12] The record demonstrates trial counsel did not object to these
absences.

fairness of the trial. Id. at 31. In coming to this conclusion, the court opined that Petitioner "could have provided no useful input[.]" Id. Finding the claim meritless, the court held appellate counsel could not be deemed ineffective for failure to raise this meritless issue. Id. (citation omitted).

It matters whether a defendant's absence is during a critical stage of the proceedings; a "defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). As the Eleventh Circuit thoroughly explained:

> The right to be present pursuant to the Confrontation Clause has been referred to as a "trial right," and is less broad than the right afforded by the Due Process Clause or Rule 43. United States v. Boyd, 131 F.3d 951, 954 (11th Cir. 1997). The Supreme Court has "emphasized that a primary interest secured by the Confrontation Clause is the right of cross-examination." Kentucky v. Stincer, 482 U.S. 730, 736, 107 S. Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (citation, quotation, and brackets omitted). Thus, this clause has the "functional purpose [of] ensuring a defendant an opportunity for cross-examination." Id. at 739, 107 S. Ct. at 2664.
>
> The Due Process Clause, on the other hand, offers a criminal defendant a somewhat broader right to be present. See Boyd, 131 F.3d at 954. The Supreme Court described this right as follows:

> The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." ... Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," ... due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence".... Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

> Stincer, 482 U.S. at 745, 107 S. Ct. at 2667 (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-08, 54 S. Ct. 330, 332-33, 78 L. Ed. 674 (1934)). Similarly, this Court has stated that "[t]he right of a criminal defendant to be present at all critical stages of his trial is a fundamental constitutional right." Proffitt v. Wainwright, 685 F.2d 1227, 1260 n. 49 (11th Cir.1982).

United States v. Novaton, 271 F.3d 968, 997-98 (11th Cir. 2001),

cert. denied, 535 U.S. 1120 (2002).

Upon review, Petitioner's presence at these conferences and during scheduling discussions would have been, at most, a mere

shadow of a benefit, or most likely, of no benefit.  See United States v. Thomason, 940 F.3d 1166, 1172 (11th Cir. 2019) (a right to be present at a modification of sentence only if it constitutes a critical stage where presence contributes to fairness), cert. denied, 140 S. Ct. 1213 (2020); In re Shriner, 735 F.2d 1236, 1241 (11th Cir. 1984) (no right to be present at bench conference involving purely legal matters); United States v. Howell, 514 F.2d 710, 714 (5th Cir.) (in camera conferences concerning a juror relating that he had been indirectly offered a bribe not a critical stage in the proceedings and no concomitant right for the defendant to be present arose), cert. denied, 423 U.S. 914 (1975).  On the other hand, for example, a criminal defendant's absence from a conference may well be considered critical if it concerns the cross-examination of witnesses put on by the government or if the absence occurs during a time of decision-making crucial to deciding as to whether to present witnesses at trial.  In those circumstances, a defendant's absence may present a reasonably substantial concern regarding fairness and the ability to defend against the charge.  See Novaton, 271 F.3d at 999 (finding absence of defendant for a lengthy time during critical stages was not harmless beyond a reasonable doubt).

Petitioner's absence from the bench conferences involving purely legal matters, such as developing jury instructions,

46

logistical decisions, and addressing the misconduct of spectators, did not limit the fairness of the proceeding because these are not the types of matters or stages of the proceeding that are critical to its outcome needing the input of the Petitioner.  Defense counsel ably handled these matters and/or participated in these stages of the proceedings without Petitioner being present and any benefit of his presence would have been "but a shadow."

Any "act or omission of counsel preventing the defendant's presence must be prejudicial" in order to obtain post-conviction relief.  Stagg v. Sec'y, Dep't of Corr., No. 5:12-cv-194-RS-EMT, 2013 WL 6184058, at *15 (N.D. Fla. Nov. 26, 2013) (district court approving and adopting the magistrate judge's report and recommendation).  See Duckett v. McDonough, 701 F.Supp.2d 1245, 1291 (M.D. Fla. 2010) (asking whether the petitioner's presence at a bench conference would have ensured a more reliable determination of the issue and finding his presence at conferences would not have provided any benefit or affected the outcome of the conferences or trial).  Here, Petitioner has not demonstrated how his presence would have enhanced the fairness of the proceedings or how his absence diminished the fairness of the proceedings.

Appellate counsel's performance did not fall below an objective standard of reasonableness for failure to raise the claim that Petitioner was absent from critical stages of the trial in

47

violation of his Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  An appellate counsel has no duty to raise every non-frivolous issue.  As evidenced by the Supreme Court of Florida's finding that Petitioner had not demonstrated he was absent from critical stages of his trial and its overriding decision this was ultimately a meritless issue, appellate counsel could not be deemed ineffective for failure to raise the claim.  No unprofessional error was made.  And, even giving Petitioner every benefit of the doubt, this claim presented a weaker issue, an issue appellate counsel may reasonably weed out.

Petitioner's appellate counsel cannot be deemed ineffective for failure to raise this matter on appeal.  Thus, Petitioner is not entitled to habeas relief based on his claim of ineffective assistance of appellate counsel.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2.   This action is **DISMISSED WITH PREJUDICE.**

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.    If  Petitioner  appeals  the  denial  of  his  Petition  for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability.** [13]    Because  this  Court  has  determined  that  a certificate  of  appealability  is  not  warranted,  the  **Clerk**  shall terminate  from  the  pending  motions  report  any  motion  to  proceed  on appeal  as  a  pauper  that  may  be  filed  in  this  case.    Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of July, 2020.

_____
BRIAN J. DAVIS
United States District Judge

sa 7/24
c:
Counsel of Record

---

[13] This Court should issue a certificate of appealability only if a  petitioner  makes  "a  substantial  showing  of  the  denial  of  a constitutional  right."    28  U.S.C.  §  2253(c)(2).    To  make  this substantial showing, Petitioner "must demonstrate that reasonable jurists  would  find  the  district  court's  assessment  of  the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement  to  proceed  further,'"  Miller-El  v.  Cockrell,  537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.